IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **07-cv-1797-JLK**

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL NO. 7,**

    Plaintiff and Counter Defendant,

v.

**GRUMA CORPORATION, d/b/a Mission Foods, Inc.,**

    Defendant and Counter Claimant.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Kane, J.

This is an action to vacate an arbitration award in a labor dispute between Plaintiff United Food and Commercial Workers International Union, Local 7 (Union) and Defendant Gruma Corp. d/b/a Mission Foods, Inc. (Company). It is before me on the parties' cross-motions for summary judgment. For the reasons stated below, I affirm the arbitration award, grant Mission's motion for summary judgment and deny the Union's motion.

Background

The following facts are undisputed:

The relationship between the Company and the Union began in 1994, when the Company purchased Candy's Tortilla Plant in Pueblo, Colorado, and adopted the labor agreement between Candy's and the Union. Since then, the Company and the Union have

negotiated several successor collective bargaining agreements (collectively "the Agreement"). With the exception of Section 18(d), which was added to the Agreement in 1991, the Agreement provisions relevant to this action have remained unchanged since the Company acquired the Pueblo facility.

This action arises from a dispute concerning when overtime pay for a seventh consecutive day of work is due under the Agreement. Section 18 of the Agreement governs payment for overtime, and provides as relevant here:

> Section 18. Overtime compensation at the rate of time and one half (1 ½ x) the employee's base hourly rate of pay shall be paid under the following conditions:
>
> \*\*\*
>
> c.   Work on the Sixth and Seventh Day. All work performed by employees on the sixth consecutive day of work within a workweek, shall be paid at the rate of one and one-half times (1 ½ x) the employee's straight-time hourly rate of pay, provided the employee actually works on the sixth (6th) day of the workweek, and has completed forty (40) hours of work. *All work performed by employees on the seventh (7th) day of work in any workweek, shall be paid for at double-time (2x) the employee's straight-time hourly rate of pay*, provided the employee actually works the sixth (6th) and seventh (7th) consecutive days, and has completed over forty-eight (48) hours of work.
>
> d.   For Sanitation Department employees, for all hours worked on the sixth (6th) and seventh (7th) day in any workweek or a combination thereof.[1]

Complaint, Ex. A (Agreement for 2004-2007) [hereinafter "Agreement"], art. 9, § 18 (emphasis added).

---

[1]   Incomplete as it appears, this is in fact the full language of Section 18(d).

"Workweek" is defined in Section 16 of the Agreement as follows: "The regularly scheduled workweek for employees shall consist of seven (7) consecutive 24-hour periods. The Company shall designate and have the right to change the starting time of all shifts. Insofar as possible, all employees shall be regularly scheduled for two (2) consecutive days off." *Id.* art. 8, § 16. The Agreement also provides that "[a]s long as the action of the Company does not violate any provisions of this Agreement, it shall have the absolute right to exercise the following rights and functions: (a) Manage its business . . .." *Id.* art. 2, § 4.

For purposes of payroll, scheduling and vacations, the Company has at all times relevant here identified the "regularly scheduled workweek" under Section 16 as the period from 12:01 a.m. on Sunday to 12:00 midnight on Saturday. Until November 2006, however, the Company paid workers double-time under Section 18(c) for hours worked on a seventh consecutive day without regard to the scheduled workweek or the day of the week on which the seventh day fell. Thus, for example, if an employee worked Thursday through Wednesday without a day off, he would receive double-time pay for Wednesday, as his seventh consecutive day of work.

In the fall of 2006, following an overtime audit by a new human resources manager, the Company decided that paying double-time on any seventh consecutive day of work was incorrect under the Agreement, and that double-time should only be paid under Section 18(c) for a seventh day of work during a scheduled workweek. Accordingly, starting in November, 2006, the Company paid seventh day double-time

only if the seventh day of work was in the same Sunday through Saturday scheduled workweek as the preceding six days.  As a practical matter, this meant seventh day double-time was paid only if the seventh consecutive day of work was a Saturday.

Shortly after the Company initiated this revised practice, production department employee Marilyn Santistevan noticed she had not received double-time pay in spite of having worked seven consecutive days.  After she complained and the Company refused to change her pay, Santistevan filed a grievance challenging the new seventh day pay practice.

After the parties were not able to resolve their dispute at Step 1 of the contractually defined grievance process, the Union submitted a written grievance report as required by Section 87 of the Agreement.  On this form, the Union stated the grievance was filed by Santistevan "and all affected."  In its list of contract articles violated, the Union identified subsection (c) of the Agreement's overtime provision, but not subsection (d), which sets out separate overtime payment requirements for sanitation department workers.

The Company denied the grievance.  Pursuant to the Agreement, the parties then mutually selected Marshall A. Snider, Esq. (Arbitrator) to arbitrate their dispute.  The parties presented evidence and argument in an arbitration hearing on May 24, 2007, and also submitted post-hearing briefs.

In an award issued on July 27, 2007, the Arbitrator denied the grievance.  In his fifteen-page decision, the Arbitrator found that the term "workweek" as used in the Agreement, including Sections 16 and Section 18(c), was ambiguous as to the beginning

and end of the seven-day workweek. He then determined the Company had authority under Section 4, the management rights provision, to resolve this ambiguity and had done so by establishing a seven-day workweek running from Sunday to Saturday. He found the workweek as so defined by the Company did not violate any express provision of the Agreement. Applying these findings to Section 18(c), the Arbitrator therefore found the Company had authority under the Agreement to set the workweek for purposes of overtime pay under Section 18(c) as the seven-day period from Sunday through Saturday, and that limiting double-time pay to a seventh day of work during this period did not violate the Agreement.

In so holding, the Arbitrator also found that the Company was not bound by its past practice of paying seventh day double-time without regard to the scheduled workweek. He based this conclusion on Section 101 of the Agreement, which provides that the Company "shall not be bound by any past practice . . . which is not specifically stated in this Agreement." Agreement art. 41, § 101. He also considered the Union's argument that the bargaining history for Section 18(c) demonstrated the parties mutually intended it to require double-time payment for work performed on any seventh consecutive day of work, but found the Union's evidence did not establish this was the intent of both parties.

The Arbitrator also refused to consider the Union's argument that the grievance included sanitation department employees whose sixth and seventh day overtime is governed by Section 18(d) of the Agreement. The Arbitrator held the Union had forfeited

this issue by failing to comply with Section 87 of the Agreement, which required that the written grievance form "clearly set forth the issue and contentions of the aggrieved party or parties and must reasonably allege a specific violation of an express provision of this Agreement." Agreement art. 34, § 87.

On August 24, 2007, the Union filed this action seeking to vacate the Arbitrator's decision and award on the grounds that the Arbitrator exceeded his authority and that his award does not draw its essence from the parties' collective bargaining agreement. The parties subsequently filed cross-motions for summary judgment.

## Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1552, 1552 (10th Cir. 1997). The mere existence of a scintilla of evidence in support of the non-moving party's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In this case, there are no disputed issues of fact. Accordingly, my task is to review the arbitration award in light of the undisputed facts to determine if grounds exist to vacate that award.

A court's review of arbitral awards in labor disputes is "among the narrowest known to the law." *LB & B Assoc., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113*, 461 F.3d 1195, 1197 (10th Cir. 2006) (internal quotation omitted). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). As a result, judicial review of an arbitration award is extremely limited: "The arbitrator's factual findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the [collective bargaining agreement], so is his interpretation of the contract." *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1267 (10th Cir. 1999).

An arbitrator's discretion is not unlimited or entirely beyond judicial review, however. An arbitrator "'does not sit to dispense his own brand of industrial justice'" and "'his award is legitimate only so long as it draws its essence from the collective bargaining agreement.'" *Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1227 (10th Cir. 2000) (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 597). An arbitration award does not draw its essence from the collective bargaining agreement "[i]f it is contrary to the express language of the contract

7

or [ii] is so unfounded in reason and fact, so unconnected with the wording and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or [iii] if viewed in the light of the language, its context, and any other indicia of the parties' intentions, it is without factual support." *LB & B*, 1197-98 (quoting *Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977) (alterations omitted)).

Consistent with the narrow and deferential standard of review, a court must find that an award draws its essence from the collective bargaining agreement and is therefore valid "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Local No. 7*, 222 F.3d at 1227 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). In other words, "so long as the award is based on the arbitrator's interpretation – unsound though it may be – of the contract, it draws its essence from the contract. . . . It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the collective bargaining agreement." *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 184 (7th Cir. 1985) (Posner, J.) (emphasis in original, internal quotations and citations omitted). "The court thus will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." *Sterling Colo. Beef Co. v. United Food Commercial Workers Local Union No. 7*, 767 F.2d 718, 720 (10th Cir. 1985).

## Discussion

The Union argues that the Arbitrator's award must be vacated because the Arbitrator exceeded his authority and did not draw from the essence of the Agreement in reaching his decision.  In particular, the Union argues the Arbitrator erred in both respects by:  (1) construing the term "workweek" in Section 18(c) of the Agreement as the Sunday to Saturday workweek established by the Company; (2) finding that Section 101 of the Agreement prevented the Company from being bound by its past practice of paying seventh day double-time without regard to the scheduled workweek; and (3) determining the Union had forfeited its grievance for sixth day time-and-one-half pay to sanitation workers pursuant to Section 18(d) by not including this issue in the written grievance form as required by Section 87 of the Agreement.

Section 90 of the Agreement prohibits an arbitrator from "chang[ing], alter[ing] or modify[ing] any of the terms and conditions set forth in this Agreement."  The Union contends the Arbitrator in effect changed the terms and conditions of the Agreement and thus exceeded his authority when he found that the Agreement did not expressly define "workweek" as used in Section 18(c) as any consecutive seven-day period and when he found that the Company had management authority pursuant to Section 4(a) to set a start and end date for a regularly scheduled "workweek."  Neither conclusion, however, is contrary to any express language in the Agreement and the relevant language is readily susceptible to the Arbitrator's interpretation of it.  Accordingly, the Arbitrator did not exceed his authority in so interpreting the Agreement.

The Union's contention that the Arbitrator did not draw from the essence of the Agreement in interpreting Section 18(c) for much these same reasons also fails. "The question is not whether the arbitrator misinterpreted the agreement, but only whether the inquiry disregarded the very language of the agreement itself." *Anheuser-Busch, Inc. v. Int'l Bd. of Teamsters Local 744*, 280 F.3d 1133, 1137 (7th Cir. 2002). The Arbitrator based his decision regarding seventh day overtime pay on his interpretation of Sections 4, 16 and 18(c) of the Agreement. He did not, therefore, disregard the language of the Agreement in reaching his decision. As a result, whether one agrees with his interpretation of these provisions or not, there is no question that the Arbitrator drew the essence of his award on this issue from the Agreement.

The Union also argues that the award does not draw its essence from the Agreement because the Arbitrator did not find Union representative Galvez's testimony sufficient to establish the parties' mutual intent to interpret Section 18(c) in the manner urged by the Union. The Arbitrator's factual determination that the Union's evidence was insufficient to establish mutual intent is not reviewable, however.[2] *See, e.g.*, *Kennecott*, 195 F.3d at 1204 (an arbitrator's factual findings are not subject to judicial review). Even if it were otherwise, this alleged error would not change the fact that the Arbitrator considered the relevant contract language and evidence in reaching his decision and

---

[2] The Union's reliance on this extrinsic evidence to determine the meaning of "workweek" as used in Section 18(c) is also inconsistent with its contention that the Arbitrator exceeded his authority in finding this term ambiguous. *See Local No. 7*, 222 F.3d at 1228 (arbitrator may consider and rely on extrinsic evidence, including bargaining history, when interpreting ambiguous provisions).

interpreted and applied the Agreement in making his award on this issue. This is precisely what the Union bargained for when it agreed to arbitrate disputes arising under the Agreement.[3] *See Enterprise Wheel & Car Corp.*, 363 U.S. at 599.

The Union's remaining challenges to the arbitration award are similarly meritless under the narrow standard of review here. The Union's contention that the Arbitrator should have determined the parties' intent with respect to payment of seventh day double-time based on the Company's past practice fails because the Arbitrator interpreted Section 101 of the Agreement as barring reliance on a past practice to bind the Company.[4] Whether one agrees with this interpretation of Section 101 or not, there is no doubt the Arbitrator was construing and applying this provision in ruling on this issue, and that the provision is at least susceptible to this interpretation. Nor did he change or modify any

---

[3]   The Union also argues that the parties' negotiation of their 2007-2010 collective bargaining agreement, in which the Company at one time proposed amending the Agreement to define the seven-day workweek as running from Sunday to Saturday, is evidence requiring that the award be vacated. Specifically, the Union contends this bargaining proposal, later withdrawn, demonstrates that the Arbitrator exceeded his authority when he found the definition of "workweek" under the 2004-2007 Agreement ambiguous as to the workweek's start and end date and that the Company was entitled to resolve this ambiguity pursuant to its management authority under the Agreement. The Arbitrator considered this subsequent bargaining history, however, and found that the Company's proposal would have done no more than clarify currently ambiguous contract language. There is no basis for me to find the Arbitrator exceeded his authority in so ruling.

[4]   Section 101 of the Agreement states as relevant here that the Company "shall not be bound by any past practice, stipulation, or understanding, or by any memoranda or bulletins, or by any requirement whatsoever which is not specifically stated in this Agreement; and no such past practice…shall be construed as in any way modifying, altering, or amending the terms or condition hereof." Agreement art. 41, § 101.

11

express terms or conditions of the Agreement in so ruling.  Accordingly, the Arbitrator did not exceed his authority in reaching this decision, and his decision on this issue draws its essence from the Agreement.

The same is true of the Arbitrator's determination that the issue of overtime pay for sanitation workers was not arbitrable because the Union had failed to identify this issue or allege a violation of Section 18(d), the overtime provision for sanitation workers, in its written grievance.  First, I note that judicial review of such a procedural matter is even more deferential than the already narrow standard of review described above: "The federal courts are to give even greater deference to an arbitrator's decision on matters of procedure which arise from the dispute and bear on its final disposition.  The Supreme Court has stated quite plainly that matters of procedure lie solely within the discretion of the arbitrator." *United Steelworkers of Am. v. Ideal Cement Co.*, 762 F.2d 837, 841 (10th Cir. 1985); *Swinerton & Walberg Co. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Ind. Local No. 3*, 806 F. Supp. 913, 916 (D. Colo. 1992).  As a result, the courts must defer to the arbitrator's judgment on such matters.  *Id.*

Even if this were not the case, I would find no basis to vacate the Arbitrator's decision that the Union had forfeited any grievance with respect to overtime pay for sanitation workers.  The Arbitrator based this portion of the award on his construction of Section 87 of the Agreement, which provides that the written grievance required at Step 2 of the Agreement's dispute resolution procedures "shall clearly set forth the issue and contentions of the aggrieved party or parties and must reasonably allege a specific

violation of an express provision of this Agreement," Agreement art. 34, § 87, and Section 85, which states that "failure to follow the [dispute resolution] procedures set forth shall result in forfeiture of the grievance," *id.* § 85.  Again, whether one agrees with the Arbitrator's interpretation of these provisions or not, there is no question that his interpretation was drawn from the essence of the Agreement.  Nor has the Union pointed to any express term or condition of the Agreement that was changed, altered or modified by the Arbitrator's interpretation of these provisions.  As a result, there is also no basis for the Union's contention that the Arbitrator exceeded his authority in finding the Union had forfeited its claimed grievance regarding overtime pay for sanitation workers under Section 18(d) of the Agreement.

For the reasons stated above, I conclude that the Arbitrator did not exceed his authority in the award resolving the parties' dispute and that his award draws its essence from their collective bargaining agreement.  As a result, I deny the Union's motion for summary judgment, grant the Company's cross motion, and affirm the arbitration award.

IT IS SO ORDERED.

Dated this 24th day of June, 2009.

                                    s/John L. Kane
                                    John L. Kane, Senior District Judge
                                    United States District Court